IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RELIOUS CARTER,

        Plaintiff,                      No. CIV S-05-00129 LKK CMK

    vs.

FREDERICK A. BROWN, et al.,

        Defendants.              FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's motion for partial summary judgment and defendant's[1] cross motion for summary judgment are presently before this court.

**I. STANDARD OF REVIEW**

        Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[1] Dr. Dunn is the only remaining defendant. The court dismissed this action against all other named defendants.

1 | 2       together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

3  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the
4  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary
5  judgment motion may properly be made in reliance solely on the 'pleadings, depositions,
6  answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be
7  entered, after adequate time for discovery and upon motion, against a party who fails to make a
8  showing sufficient to establish the existence of an element essential to that party's case, and on
9  which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of
10 proof concerning an essential element of the nonmoving party's case necessarily renders all
11 other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so
12 long as whatever is before the district court demonstrates that the standard for entry of summary
13 judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

14            If the moving party meets its initial responsibility, the burden then shifts to the
15 opposing party to establish that a genuine issue as to any material fact actually does exist.  See
16 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to
17 establish the existence of this factual dispute, the opposing party may not rely upon the
18 allegations or denials of its pleadings, but is required to tender evidence of specific facts in the
19 form of affidavits, and/or admissible discovery material, in support of its contention that the
20 dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party
21 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
22 of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
23 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
24 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
25 return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,
26 1436 (9th Cir. 1987).

1    In the endeavor to establish the existence of a factual dispute, the opposing party
2 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
3 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
4 versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary
5 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
6 genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
7 committee's note on 1963 amendments).
8    In resolving the summary judgment motion, the court examines the pleadings,
9 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
10 any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,
11 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the
12 court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.
13 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
14 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
15 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
16 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
17 show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken
18 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
19 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

20 **II. ANALYSIS**

21    Plaintiff filed his complaint on January 16, 2002, alleging that defendant acted
22 with deliberate indifference in failing to provide plaintiff with dental care.  (Compl. 2.)  At all
23 times relevant to this action, plaintiff was incarcerated at High Desert State Prison in Susanville,
24 California.  At the time he was seeking dental treatment, plaintiff had been placed in
25 administrative segregation for having a weapon in his cell.  At all times relevant to this action,
26

1   defendant was a dentist employed by the California Department of Corrections at High Desert
2 State Prison in Susanville, California.
3           On December 29, 1999, plaintiff requested an examination for a "dental
4 emergency." (Def.'s Undisputed Facts, 3; Dunn decl. ¶ 4.) Dr. Dunn was on duty at that time
5 and saw plaintiff immediately for treatment. (Id.) During the December 29th emergency
6 appointment, defendant reviewed plaintiff's entire medical file, including all dental records and
7 x-rays. (Def.'s Undisputed Facts, 2., Dunn decl., ¶ 4) Plaintiff's dental records revealed a
8 pattern of infrequent dental appointments, failure to complete recommended treatment, heavy
9 smoking, and poor oral hygiene. (Id.) The records showed that plaintiff had experienced pain,
10 swelling and bleeding gums for several years prior to December 29, 1999. (Id.) For example,
11 plaintiff's x-rays from 1991 show severe, advanced dental bone loss as a result of years of
12 neglect and gum disease. (Id. at 3)
13           At the December 29, 1999 appointment, defendant observed that plaintiff had
14 advanced periodontitis. (Id. at 4.) Defendant recommended that plaintiff rinse his mouth, teeth
15 and gums with Peridex, an anti-bacterial, and gave him Tetracycline. (Id.) Defendant
16 recommended that plaintiff return to the clinic for x-rays, diagnosis and development of a
17 treatment plan. (Id.) Given plaintiff's prior dental history, the gross lack of oral hygiene, and
18 the advanced state of decay, defendant believed that the only course of treatment was extraction
19 of plaintiff's teeth. (Id.) Due to the advanced state of infection, extraction was not possible
20 during the December 29, 1999 appointment. (Id.) Defendant opined that the appropriate course
21 of treatment was to allow the antibiotics enough time to control the infection before initiating
22 oral surgery. (Id.)
23           Plaintiff alleges that instead of defendant recommending that plaintiff return to
24 the dental clinic for treatment, defendant informed him that he would be returned to the clinic for
25 more treatment, x-rays, and diagnosis. (Pl.'s Undisputed Facts, 2, ¶ 4.) Defendant disputes that
26 plaintiff was told he would be returned to the clinic. (Def.'s Resp. to Pl.'s Separate Statement of

1  Undisputed Facts, 2.)  Defendant states that clinic dentists do not have the authority to schedule
2  appointments or to require that the prison bring inmates for appointments.  (Id.; Dunn decl. ¶ 7.)
3  Instead, the burden is on the prisoner to submit the appropriate request forms in order to receive
4  treatment.  (Id.)  Plaintiff had a history of failing to follow the instructions of his dental care
5  providers. (Dunn decl., ¶ 5.)

6        Plaintiff states that he attempted to receive dental care by filing a "602" appeal on
7  or about January 16, 2000.  (Pl's decl. in Support of his Mot. Summary J., ¶ 4 and Ex. B.)
8  Defendant states that, through his work at High Desert State Prison and the treatment of over
9  1,000 inmates, he became familiar with the procedures for making inmate appointments for
10 dental care.  (Dunn decl., ¶ 7.)  To make a dental appointment, an inmate fills out a request form
11 and an appointment is scheduled by a dental assistant when the form is submitted.  (Id.)  Filing a
12 "602" form is not the proper way to schedule a dental appointment.  (Id.)  The "602" form is a
13 form for submitting appeals concerning dental care.  (Id.)  Generally, the "602" form is sent to the
14 appeals office, where it is marked received.  (Id.)  The "602" form attached to plaintiff's
15 declaration as exhibit B does not have a "received" stamp indicating that it was received by the
16 appeals office.  (Id.)  There is no indication that the form was ever sent to either defendant or to
17 the appeals office.  (Id.)   Plaintiff makes no explanation for why he did not submit the proper
18 form for a dental appointment, as he had done on prior occasions.  (Id.)

19        Plaintiff applied for a dental appointment on March 6, 2000.  (Def.'s Undisputed
20 Facts, 4.)  When defendant saw plaintiff on March 6, 2000, plaintiff had a full set of x-rays
21 taken.  (Dunn decl., ¶ 4.)  The x-rays confirmed that the only course of treatment was to extract
22 plaintiff's teeth.  (Id.)  When this was explained to plaintiff, he gave his informed consent for the
23 extraction, and most of his teeth were extracted on March 20, 2000.  (Id.)  Defendant did not
24 extract all plaintiff's teeth because he hoped to be able to save a few.  (Id.)  However, on April
25 30, 2000, plaintiff returned to the clinic and had his remaining teeth extracted.  (Id.)
26 ///

Plaintiff brought this action, alleging that defendant's deliberate indifference to plaintiff's dental needs in violation of the Eighth Amendment caused plaintiff injury. Plaintiff has filed a motion for partial summary judgment,[2] contending that he is entitled to judgment as a matter of law on the issue of defendant's deliberate indifference. Defendant has filed a cross motion for summary judgment alleging that plaintiff has failed to establish, as a matter of law, that defendant was deliberately indifferent to his medical needs in violation of the Eighth Amendment.

The Eighth Amendment to the United States Constitution imposes on the states an obligation to provide for the basic human needs of prison inmates. See Farmer v. Brennan, 114 S.Ct. 1970, 1976 (1994).[3] While "[t]he Constitution 'does not mandate comfortable prisons,' ...neither does it permit inhumane ones." Id. (citation omitted); see also Helling v. McKinney, 113 S.Ct. 2475, 2480 (1993). Deliberate indifference to a prisoner's medical needs in violation of the Eighth Amendment can be demonstrated in two ways: (1) by prison officials denying, delaying or intentionally interfering with medical treatment or; (2) by the manner in which prison physicians provide medical care. See Estelle v. Gamble, 429 U.S. 97 (1976); Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). Deliberate indifference exists only when prison officials know of and disregard an excessive risk to inmate health or safety. See Farmer, 511 U.S. at 837; see also, McGuckin v. Smith, 947 F.2d 1050, 1060 (9th Cir. 1992) (overruled on other grounds) (stating that "a defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established"). The indifference to a prisoner's medical need must be substantial because inadequate treatment due to negligence, inadvertence or differences in judgment between an inmate and medical

---

[2] Although plaintiff titled his motion as one for "partial" summary judgment, a fair reading of the motion indicates that plaintiff seeks summary judgment on all dispositive issues of the case–namely, defendant's deliberate indifference in violation of the Eighth Amendment.

[3] The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII.

1  personnel does not rise to the level of a constitutional violation. See Franklin v. Oregon, 662
2  F.2d 1337, 1344 (9th Cir. 1981).  A prisoner who makes a claim of deliberate indifference to a
3  serious medical condition based on delay must show that the delay resulted in substantial harm.
4  See Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990).
5           Plaintiff has not demonstrated that defendant was deliberately indifferent to his
6  needs in violation of the Eighth Amendment.  As noted above, in order to show deliberate
7  indifference to a serious medical condition, plaintiff must show that the delay in treatment
8  resulted in substantial harm.  Plaintiff contends that the burden was on defendant to schedule a
9  follow-up appointment for him following his December 29, 1999, visit to the clinic.  Plaintiff
10 appears to contend that, because of defendant's failure to schedule a follow-up appointment, he
11 was not seen again at the dental clinic until March of 2000.  Even if the burden were on
12 defendant to have scheduled a follow-up visit for plaintiff, plaintiff cannot demonstrate that the
13 delay in treatment caused him serious harm. See Wood, 900 F.2d at 1335.  Plaintiff's medical
14 records indicate that he had a history of severe dental problems.  (Dunn decl., ¶ 4.)  At his
15 December 29, 1999, visit, defendant opined that the only possible course of treatment was the
16 extraction of all of plaintiff's teeth.  (Id.)  However, at that visit, this course of treatment was
17 impossible due to the infection in plaintiff's mouth. ( Id.)  When plaintiff was seen again at the
18 dental clinic in March of 2000, his teeth were extracted, as was the planned course of treatment
19 in December of 1999.  Plaintiff has not demonstrated that the delay between his December of
20 1999 appointment and his March of 2000 appointment, caused him serious harm.
21          Plaintiff also cannot show that defendant knew of an excessive risk to plaintiff
22 and disregarded it.  Defendant stated that at the time he examined plaintiff in December of 1999,
23 his periodontitis had advanced to the point where plaintiff's teeth could not be saved.  (Dunn
24 decl., ¶ 4.)  At the time of the December of 1999 visit, defendant took the only course of action
25 available to treat plaintiff; proscribing him a mouthwash and antibiotics to try to get the infection
26 in his mouth under control.  (Id.)  Defendant also states that at that time, he did not go forward

with oral surgery to extract plaintiff's teeth because of the risk due to the infection in plaintiff's mouth.  (Id.)  Thus, the record indicates that instead of disregarding a risk to plaintiff, defendant acted in a manner designed to minimize the risk of harm to plaintiff.  See Toguchi v. Chung, 391 F.3d 1051, 1056 (9th Cir. 2004).

Accordingly, plaintiff has not demonstrated any facts or circumstances indicating that defendant was deliberately indifferent to his medical needs in violation of the constitution.

## III.    CONCLUSION

IT IS RECOMMENDED THAT:

1. Plaintiff's motion for partial summary judgment be denied;

2. Defendant's motion for summary judgment be granted and;

3. Civ. Case No. S-05-00129 LKK CMK, be dismissed with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 7, 2005.

                                           _____
                                           **CRAIG M. KELLISON**
                                           UNITED STATES MAGISTRATE JUDGE